# DAVID K. BERTAN
**ATTORNEY AT LAW**
888 GRAND CONCOURSE, SUITE 1N
BRONX, NEW YORK 10451

(718) 742-1688
FAX (718) 585-8640
E-MAIL: DBERTAN@YAHOO.COM

```
The Government shall respond by letter no
later than April 27, 2020.  SO ORDERED.

                        [signature] 4/22/2020
```

April 21, 2020

*Via ECF*

Hon. Loretta A Preska, United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Hon.

      Re:     USA v. Jones (Defendant Keith Lynch)
                20-Cr-202 (LAP)

Dear Judge Preska:

      I represent Mr. Lynch in the above matter.  I am submitting this letter motion as a request for this Court to issue an order granting bail to Mr. Lynch on such conditions as the Court deems appropriate.

      Mr. Lynch was arrested and presented before the Southern District on March 17, 2020.  He was charged with Hobbes Act Robbery, Conspiracy to Commit Hobbes Act Robbery, and Narcotics Conspiracy.  He was arraigned before the presiding Magistrate Judge, and we consented to detention without prejudice.  The arraignment was conducted in one of the largest courtrooms in the building to allow for social distancing.

      Under cases interpreting the Bail Reform Act, a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial. *United States v. Shakur,* 817 F.2d 189, 195 (2d Cir. 1987) (Citations omitted).  Under

Hon. Loretta A. Preska, United States District Judge
April 21, 2020
Page 2 of 5

the Bail Reform Act, a court has the inherent power to release a defendant on their own recognizance, or, if the Court deems it appropriate, under the least restrictive conditions that reasonably assure the presence of the defendant and protect the safety of the community.  18 U.S.C. § 3142 (c)(1)(B).  A defendant can be detained without bail only when there are no conditions that can reasonably assure the defendant's appearance or the safety of the community.  18 U.S.C. §3142 (e)(1).

In cases where a defendant is charged with an offense under the Controlled Substances Act that has a maximum term of imprisonment of 10 years or more, the Bail Reform Act presumes detention. However, that presumption is rebuttable by a defendant who can provide evidence he does not present a danger to the community or a risk of flight; the Government bears the burden of persuading a court, by clear and convincing evidence, that the defendant presents a danger to the community, and by a preponderance of the evidence that he is a flight risk.  *United States v. Hoey*, 11 CR 337 (PKC), 2014 WL 572525 (SDNY 2014).

In considering bail determinations, the Court must consider the factors listed in 18 USC § 3142 (g), such as: the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community that would be presented by the defendant's release.

Where a court has found that a defendant should be detained, the court nonetheless has the power to permit temporary release of a defendant if necessary to allow the defendant to prepare a defense, or for other compelling reasons, such as medical conditions.  18 USC § 3142 (i).  *See United States v. Stephens,* 15 CR 95 (AJN), 2020 WL 1295155 (SDNY 2020) (conditions relating to COVID-19, including restrictions on legal visits, warrant temporary release).

Under 18 USC 3145 (c), a person subject to detention "maybe ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  In *United States v. DiSomma,* 951 F.2d 494 (2d Cir. 1991), the Court found that "exceptional reasons" are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *Id.* at 497.

Since Mr. Lynch's initial presentment and arraignment, the COVID-19 pandemic has taken over much of the country, with New York City as its epicenter. As of April 20, 2020, over 11,000 people in New York State died from COVID-19.

There is little doubt that COVID-19 presents tremendous risk to inmates and staff in any jail or prison.  Prisons are effectively petri dishes for the growth of infectious diseases.  Inmates are housed under extremely close quarters, with no opportunity for social distancing.  Under current conditions at the jail, inmates are

locked down for most of the day, being released for a few hours every second or third day for short periods.  In those few minutes, the inmates must shower, make phone calls, check e-mails if possible, and otherwise take care of their personal needs.  Guards are wearing limited PPE, while inmates have none.

Testing in the jails is almost non-existent.  According to the most recent report from the warden of MDC, 11 inmates tested, 5 positive.  No inmates have been tested since Friday, April 10, 2020 In total, the BOP now has 449 inmates who have tested positive, up from one inmate on March 19, 2020.  208 staff members have tested positive.  There is no question COVID-19 is spreading throughout the BOP; the only reason the number appears low is because there is almost no testing.  As of yesterday, 22 inmates have died from the virus[1].

An article from the Daily News, dated April 20, 2020, provides more insight.  According to the News, the reported figures are suspect.  A union official stated that the BOP's number was articially low because it did not include workers who were tested on their own, not through the MCC.  The official mentioned the case of one guard who, despite showing symptoms of the virus, was told to return to work, and was ultimately found to have COVID-19

In the Westchester County Jail, as of April 5, 2020, there were 12 inmates with COVID-19; as of April 6, that number had increased to 23, while 60 staff members were similarly infected.

BOP has gone through 6 "action plans" in an attempt to limit the spread of COVID-19.  These plans ranged from pro forma screening at the beginning of the pandemic, to staggered meal times and activity times in order to limit gatherings of inmates, to lockdowns that have inmates confined to their cells for most of the day.  The latest "action plans" merely extend those lockdowns.  Sanitizing equipment, face masks, gloves, or other PPE are not provided to inmates.  At this point, the action plans simply help the virus to spread within the quarantine areas.

By way of example, the New York City Department of Corrections has released over 900 inmates from Rikers Island, yet the virus continues to spread throughout that facility.  Scores of NYC Corrections officers have contracted the virus, and several have died.  In late March, Rikers Island Chief Physician Ross McDonald noted that COVID-19 cases increased from 1 to 200 in just 12 days.

---

[1] https://www.bop.gov/coronavirus/

Hon. Loretta A. Preska, United States District Judge
April 21, 2020
Page 4 of 5

Mr. Lynch has advised me he was being locked down in his cell for most of the day, confined in a small space with another inmate who was exhibiting signs of extreme illness, including coughing up what appeared to be blood. Mr. Lynch's requests for additional Asthma medication went ignored from April 11 until April 15, when I emailed the legal department at the MCC and was advised his prescription was being refilled that night. I am attaching a photograph of Mr. Lynch's recent discharge report from Harlem Hospital on December 24, 2019, showing he suffers from chronic persistent asthma, and was prescribed Albuterol, Prednisone, and Fluticasone to treat his condition. As of Thursday, April 16, Mr. Lynch began suffering chest pains.

Mr. Lynch's sister and I have diligently attempted to obtain his recent medical records, detailing his asthma condition, but due to COVID-19, medical records departments have been overwhelmed and are unable to comply with our requests.

Mr. Lynch has advised me that MCC has not provided products to clean his two-person cell. He and his cell-mate are locked down, with 1.5 hours every three days to shower, gather food, make calls, and read and answer emails. Every dorm in MCC has inmates who have tested positive for COVID-19, and the only medical "treatment" is taking temperatures daily.

If released, Mr. Lynch would abide by any reporting conditions this Court would impose. Mr. Lynch has access to an iPhone for video confirmation and reporting on a daily basis. His sister and his girlfriend are willing to co-sign a bond. He would live with his sister in Bronx County. On a more personal note, Mr. Lynch's girlfriend is due to deliver their child in a few weeks.

COVID-19 has caused massive changes in our society. While social distancing and shutdowns have slowed its spread here in New York, its presence in the Federal prison system is increasing. It has increased by several thousand percent in the Bureau of Prisons within a month, and can only get worth. There is no testing within the BOP; social distancing is impossible, quarantines have infected and uninfected prisoners in the same dorm, and the BOP's response is to continue the lockdown.

Mr. Lynch is medically compromised. He is living in a virtual petri dish of infection, with little opportunity to even sanitize his hands, much less keep appropriate distances from other inmates. Under the present circumstances, including his medical condition and the spread of the virus, temporary release is appropriate and humane. Accordingly, I am respectfully requesting that this Court issue an order directing the temporary release of Mr. Lynch, under such conditions as the Court deems appropriate.

Hon. Loretta A. Preska, United States District Judge
April 21, 2020
Page 5 of 5

    Thank you for your consideration in this matter.

                                                Very truly yours,
                                                        *-S-*
                                                David K. Bertan

DKB
cc:     AUSA Bagliebter (Via ECF)



# AFTER VISIT SUMMARY

Keith Lynch  MRN: 1470763

📅 12/24/2019   📍 Harlem ED Adult 212-939-2250

## Instructions

Return to ER or call 911 if symptoms worsen, you develop fever, nausea, vomiting, chills, shortness of breath, difficulty breathing, chest pain, or any other symptom that concerns you.

Follow up with pulmonologist on your appointment.

Take albuterol as needed.
Take flovent two times a day every day.
Take two tablets of prednisone every day for the next 4 days.



**Your medications have changed**

➡ START taking:
   predniSONE (DELTASONE)

➡ CHANGE how you take:
   albuterol (PROVENTIL HFA;VENTOLIN HFA)
   fluticasone 110 MCG/ACT (FLOVENT HFA)
   fluticasone 220 MCG/ACT (FLOVENT HFA)

Review your updated medication list below.

🛒 **Pick up these medications at CVS/pharmacy #3224 Btw 116th&117th - NEW YORK, NY - 130 LENOX AVE AT CORNER OF 116TH STREET**
albuterol • fluticasone 220 MCG/ACT • predniSONE
Address: 130 LENOX AVE, NEW YORK NY 10026
Phone: 212-348-2199

## What's Next

**JAN 15 2020** — **New Patient**
Wednesday January 15 1:40 PM
Ronald H. Brown Pavilion
3rd Floor

Harlem Pulmonary
46 West 137th Street
NEW YORK NY 10037
212-939-8400

## Today's Visit

You were seen by Anjali S Hulbanni, MD and Daniel Mor, MD

**Reason for Visit**
- Shortness of Breath
- Cough
- Wheezing

**Diagnosis**
Moderate persistent asthma with exacerbation

### Lab Tests Completed
Basic Metabolic Profile
Blood Gases W/Chemistries, Venous
CBC and Differential

### Done Today
Insert Peripheral IV

### Medications Given
magnesium sulfate stopped at 10:30 AM

---

NYC HEALTH+HOSPITALS | MYCHART

With MyChart, you can... Message your doctor... Request refills... See test results... See your visit summaries and upcoming appointments and much much more...

To sign up go to **http://mychart.nychealthandhospitals.org**, click "**Sign Up Now**", and enter personal activation code: **NGVBS-VMWXK**
Expires: 3/16/2020 6:48 AM.

Additional Information:
If you have questions, you can go to **https://epicmychart.nychhc.org/help** to contact our MyChart staff. Remember, for emergencies, always call 911 - do not use MyChart.

---

Keith Lynch (MRN: 1470763) • Printed at 12/24/19  2:28 PM                                   Page 1 of 5   **Epic**

# General Emergency Department Discharge Instructions

We appreciate that you chose us as your healthcare provider.

This form provides you with information about the care you received in our Emergency Department and instructions about caring for yourself after you leave the Emergency Department. If you have further questions concerning this visit please call us at the included phone number above on this form. Please keep this form and bring it with you should you need additional treatment. If your symptoms become worse or you are not improving as expected and you are unable to reach your usual health care provider, or get to your follow-up appointment, you should return to the Emergency Department immediately. We are available 24 hours a day.

It is important that you keep appointments that may have been scheduled. If you are unable to make an appointment, please call the corresponding clinic to reschedule your appointment.

## Instructions



**Your medications have changed**

➡ START taking:
  predniSONE (DELTASONE)

🔄 CHANGE how you take:
  albuterol (PROVENTIL HFA;VENTOLIN HFA)
  fluticasone 110 MCG/ACT (FLOVENT HFA)
  fluticasone 220 MCG/ACT (FLOVENT HFA)

Review your updated medication list below.

## Home Medication Information

The list of your home medications is based on the information provided by you (or your representative) during your Emergency Department visit, and/or the information contained in your medical record. In addition, some of your home medications **may have been changed** by the Emergency Department provider who evaluated you. These changes **may** include:
- New medications
- Changes to the amount or how often you take a medication
- Discontinuation of a medication

Please review the information below carefully. **Continue all your current medications as you are presently taking, with the exception of the following changes below. If you have questions about any of the medications or the changes, please contact your Primary Care Physician, the Provider who prescribed the medication, or your Pharmacist.**

# AFTER VISIT SUMMARY

Keith Lynch  MRN: 1470763

**NYC HEALTH+HOSPITALS | Harlem**

📅 2/20/2020   📍 Harlem ED Adult 212-939-2250

---

## Instructions

Please take medication as prescribed. Please follow up with medicine clinic or primary care physician in 3-5 days. Please return to the emergency department for worsening symptoms.

---


**Your medications have changed**
➡ START taking:
  benzonatate (TESSALON)
  predniSONE (DELTASONE)

◆ CHANGE how you take:
  albuterol (PROVENTIL HFA;VENTOLIN HFA)

Review your updated medication list below.


**Pick up these medications at Walgreens Drugstore #17604 - BRONX, NY - 541 W 235TH ST AT NWC OF WEST 235TH ST & OXFORD AVE**
albuterol • benzonatate • predniSONE
Address:  541 W 235TH ST, BRONX NY 10463-1708
Phone:    718-548-8600


**Ambulatory Referral to Med Primary Care (MPC)**
Where: Harlem Primary Care (212-939-8400)
Address: 46 West 137th Street NEW YORK NY 10037
Expires: 8/18/2020 (requested)

---

## Today's Visit
You were seen by Felicia A Hercules, MD and Alexander C Meyers, MD

**Reason for Visit**
Asthma

**Diagnosis**
Mild intermittent asthma without complication

📷 **Imaging Tests**
DX Chest 2 Views

## What's Next
You currently have no upcoming appointments scheduled.

---

Keith Lynch (MRN: 1470763) • Printed at 2/20/20 6:19 PM

Page 1 of 5   **Epic**

# Results

DX Chest 2 Views (Order 145851719)

## DX Chest 2 Views

Status: Final result   Visible to patient: No (Not Released)   Next appt: None

Order: 145851719

### Details

| Reading Physician | Reading Date | Result Priority |
|---|---|---|
| Richard Rafal, MD | 2/20/2020 | STAT |
| Soumya Vempalle, MD | 2/20/2020 | |

Narrative
PA & LATERAL VIEWS OF CHEST

HISTORY: Shortness of breath, cough..

COMPARISON: Chest x-ray dated December 20, 2019

FINDINGS:

There is no consolidation, large pleural effusion, or discernible pneumothorax. The cardiomediastinal silhouette has a normal size. The bones are unremarkable.

Impression
IMPRESSION: No radiographic evidence of acute cardiopulmonary disease.

Vempalle/Rafal

Attestation: I have personally reviewed the study and provided clinical information. I have assessed/edited the resident's findings and this report is based on my own observation and interpretation.

Final report dictated by Soumya Vempalle and signed by Richard Rafal
2/20/2020 5:09 PM

Specimen Collected:   Last Resulted: 02/20/20   Order Details View Encounter Lab and Collection
02/20/20 16:23        17:09                      Details Routing Result History

## Relevant Priors

| Procedure | Date | Study Status | PACS Link |
|---|---|---|---|
| DX Chest 2 Views | 12/20/2019 | Final | Images |
| DX Chest 2 Views | 01/03/2020 | Final | Images |
| DX Chest 2 Views | 01/03/2020 | Final | Images |

Printed by MEYERS, ALEXANDER C [64119] at 2/20/2020 5:38:33 PM