```
---------------------------------- x
UNITED STATES OF AMERICA,          :
                                   :
        - against -                :        20-CR-202(LAP)
                                   :
                                   :            ORDER
KEITH LYNCH,                       :
                                   :
                Defendant.         :
----------------------------------x
```

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

    Before the Court is Defendant Keith Lynch's request for bail pending trial based on the COVID-19 pandemic. For the reasons set forth below, the request is denied.

    I.    BACKGROUND

    On February 6, 2020, Defendant, with others, participated in an armed robbery of a marijuana dealer in the lobby of an apartment house in the Bronx. Defendant rode with his co-defendants to the apartment house and waited in the car for them to emerge. During the robbery, one accomplice brandished a loaded firearm, and another was carrying a firearm given to him by Defendant. Defendant drove the accomplices away, and the accomplices were arrested in the vehicle just after Defendant exited the vehicle to go into a bodega.

    Defendant and his co-conspirators were indicted on March 17, 2020, and charged with conspiracy to commit robbery, robbery, narcotics conspiracy, and using and carrying a firearm,

which was brandished, during a crime of violence and drug trafficking crime, in violation of 18 U.S.C. Sections 1951, 924(c)(i), (II) and 2, and 21 U.S.C. Section 846.  That morning, law enforcement went to Defendant's residence to arrest him. Upon their arrival, Defendant tried to sneak out the back door of the residence and down the fire escape.  The escape attempt was unsuccessful, and Defendant was arrested and detained on consent since that time.

II.  LEGAL STANDARD

Pursuant to the Bail Reform Act, the charges in the Indictment carry a statutory presumption that "no condition or combination of conditions will reasonably assure the Defendant's appearance in court and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). Because the statutory presumption of detention is triggered here, the Defendant bears the burden of producing sufficient evidence to rebut that presumption. See United States v. Martin 782 F.2d 1141, 1144 (2d Cir. 1986).

In determining whether a defendant has rebutted that statutory presumption, courts are instructed to consider: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the Defendant, including family ties, employment, community ties, past conduct; and (4) the nature and seriousness of the danger to the community or to an individual. See 18 U.S.C. § 3142(g)(1). Even where a defendant produces

sufficient evidence to rebut the statutory presumption of detention, the presumption does not disappear; instead it becomes a factor to be weighed and considered like all the others in deciding whether to release the defendant. See United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991).

If the defendant meets his burden of production, the ultimate burden of persuasion remains with the Government, which must establish by a preponderance of evidence that the Defendant is a flight risk and that no condition or combination of conditions will assure his appearance in court, or must establish by clear and convincing evidence that the defendant poses a danger to any other person or the community.  For purposes of the bail statute, the concept of dangerousness includes "the danger that the Defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993).

When detention is appropriate under the Section 3142(g) factors, the Court may grant temporary release upon finding "such release to be necessary for ... [a] compelling reason." 18 U.S.C. § 3142(i).  When making this assessment, it is appropriate for the Court to balance "the danger to the community presented by [the defendant's] release" against "the danger to [the defendant] presented by his incarceration at the MCC." United States v. Conley, 19 Cr. 131 (PAE) (S.D.N.Y. Mar. 31, 2020).

III. DISCUSSION

As noted above, this is a presumption case.

Here, the nature and circumstances of the crimes charged weigh heavily against release. As noted above, Defendant is charged with conspiring to and committing an armed robbery of a drug dealer, the former, a crime that the Court of Appeals has noted "weighs heavily against release" because it "presents a high risk of violence." United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001). In the case of this Defendant, the risk of violence is higher than normal because Defendant gave a co-conspirator the firearm the latter carried while committing the robbery in the lobby of an apartment building. Thus, if released, Defendant would pose a serious danger to the community. The charged offense also weighs against release because of the significant penalty faced by Defendant on the charge of aiding and abetting the brandishing of a firearm in connection with the robbery.

The Government's evidence against the Defendant is overwhelming. Evidence of the robbery consists of surveillance footage of the robbers entering the building, standing outside the victim's apartment, leaving the building, and entering the car. Law enforcement testimony, corroborated by body camera footage, establishes that the co-conspirators were pulled over within four blocks of the victim's building and that law

4

enforcement found a bag of marijuana, a firearm, a loose round of ammunition, a bulletproof vest, and other items in the car. The Defendant's role in the robbery is established by surveillance tape showing him getting into the driver's seat of the vehicle as his co-conspirators enter the apartment building. The Defendant is also shown inside the bodega shortly after the robbery on a video call with one of the co-conspirators.  That call and other contacts between Defendant and a co-conspirator are reflected in phone records obtained through search warrants.

    The history and characteristics of the defendant also weigh heavily in favor of detention for both dangerousness and flight risk concerns. The defendant has been incarcerated for much of the past 15 years, and when he has been out under court supervision, he has continually violated the conditions of his release. The defendant was incarcerated from August 2005 through April 2009 on a burglary charge for which he was adjudicated a youthful offender. Four months after his release, in August 2009, the defendant was arrested for possessing a loaded firearm, reckless endangerment and menacing. The defendant pled guilty to menacing a police officer or peace officer and criminal possession of a weapon in the second degree. For these offenses, the defendant was incarcerated from May 2010 through early January 2013. After that, the defendant was received by parole, but his parole was revoked on two separate occasions, once in August 2013 and again in November 2017. He also

5

sustained two additional convictions in 2016—one for criminal possession of a firearm and one for robbery in the second degree. During his 2016 arrest for criminal possession of a firearm, the defendant was found in possession of loaded firearm and resisted arrest by flailing his arms and kicking his legs, refusing to be handcuffed. For these 2016 offenses, the defendant was again incarcerated, until his release in April 2019.

The defendant's extensive criminal history demonstrates his dangerousness and flight risk. Despite being incarcerated for long periods of time as a young man, the defendant has not been deterred. Rather, it appears to have only emboldened him to continue his criminal conduct. Further, the defendant's consistent failure to comply with the most basic condition of supervision—ceasing criminal activity—shows that he cannot be trusted to abide by conditions of pretrial release no matter how strict. The other characteristics of the defendant reflected in his Pretrial Services Report, such as his attempt to sneak out the back door at the time of his arrest, his admitted prior gang membership, and his gambling addiction, serve to corroborate the picture painted by the defendant's criminal history of an individual who presents a great risk of danger and flight.

Finally, the danger to the community is serious. The charged robbery involved bringing two firearms into a residential apartment building in the middle of the day. This

indicates that the defendant has access to both firearms and individuals who use them. To release a Defendant who participated in this dangerous crime while on parole and after a long history of firearms offenses, presents significant danger to the community.

Here, it clear beyond peradventure that Defendant has not overcome the presumption that no conditions of release will assure the safety of the community and that Defendant will return to court.

The Defendant argues that notwithstanding the Section 3142(g) factors, he should be granted temporary release under Section 3142(i) because his asthma condition places him at risk for contracting COVID-19.  The Court assumes, without deciding, that it has the power to decide Defendant's motion despite his failure to exhaust administrative remedies.

Defendant is 31 years old, diagnosed on February 20, 2020, with "mild, intermittent asthma without complications." (Motion, dkt. no. 24, Att. at p.3).  The Defendant proffers no medical complications that he has experienced to date as a result of his asthma.  Furthermore, the Government has detailed the steps taken by Bureau of Prisons in general and the MCC in particular to minimize the effect of COVID-19.

On balance, the Court finds that Defendant has not demonstrated that release is necessary for compelling reasons, and, accordingly, his request for release is denied.

**SO ORDERED.**

Dated:    New York, NY
          May 5, 2020

_____
Loretta A. Preska
Senior United States District Judge